DENNIS K. BURKE
United States Attorney
District of Arizona

MICHAEL T. MORRISSEY
Assistant U.S. Attorney
Arizona State Bar No. 012531
Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Telephone: (602) 514-7500
mike.morrissey@usdoj.gov

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America<br><br>            Plaintiff,<br><br>     v.<br><br>Elton Simpson,<br><br>            Defendants. | CR-10-055-PHX-MHM<br><br>**GOVERNMENT'S SUPPLEMENTAL TRIAL MEMORANDUM** |

I. <u>The Statutory Definition of International Terrorism Is Broad</u>

The definition of international terrorism contained in 18 U.S.C. § 2331 has been incorporated into many parts of the federal criminal code. The definition contained in Section 2331 is used in numerous statutory provisions, including those relating to biological toxins, determining civil liability for acts of international terrorism against U.S. nationals, and many other uses. *See* Nicholas J. Perry, "The Numerous Federal Legal Definitions of Terrorism: The Problem of Too Many Grails," 30 J. Legis. 249, 257 (2004)(listing at least nine instances where Section 2331's definition is incorporated into the United States Code, the Fed. R. Crim. P., and the C.F.R.).

Section 2331's definition is broad, because it is part of a broad effort to combat terrorism where that effort can be effective. The Seventh Circuit, sitting *en banc* in *Boim v. Holy Land Foundation*, 549 F.3d 685 (7th Cir. 2008), construed whether

under 18 U.S.C. § 2333, civil liability attached for acts of international terrorism, as defined in Section 2331, where donors provided money to a terrorist group. The Court noted that in bringing such donors within the reach of section 2333, "the first link in the chain" is the definition contained in Section 2331. *Id* at 690.   The Court stated:

> By this chain of incorporations by reference (section 2333(a) to section 2331(1) to section 2339A to section 2332), we see that a donation to a terrorist group that targets Americans outside the United States may violate section 2333.  Which makes sense as a counterterrorism measure.

*Id*.  As the Court noted, damages are not an effective remedy against terrorists, "whereas suits against financiers of terrorism can cut the terrorists lifeline." *Id*. at 691. Accordingly, in section 2333, using the definition of international terrorism contained in section 2331,  Congress acted where it could, against those who funded but did *not* in fact carry out violent acts themselves.   As the Court stated:

> And given such foreseeable consequences, such donations would "**appear** to be intended... to intimidate or coerce a civilian population" to "affect the conduct of a government by ... assassination," as required by section 2331(1) in order to distinguish terrorist acts from other violent crimes, though it is not a state of mind requirement; **it is a matter of external appearance rather than subjective intent**, which is internal to the intender.

*Id*. at 694 (bold added).

      The logic of *Boim* shows how, in the case at bar, defendant's false statement to the FBI, regarding whether he had discussed with anyone traveling to Somalia, is covered by Section 2331.    Viewed objectively, defendant's statements about making it to the battlefield in Somalia, where the "kuffar" are "fighting against us because they don't want us to establish sharia," because jihad is "bad to the kaffir"  (Exhibit 2, recording of 5/29/09), and his statements about making it to Somalia from South Africa (Exhibit 4, recording of 10/23/09) are statements about violence.  Because the test is objective, not subjective, defense counsel's theory that perhaps defendant would not, in fact, have followed through on violence, is irrelevant.  *Id*.; *see also Wultz v. Islamic Republic of Iran*, 2010 WL 4228350 (D.D.C.), at 33 (Section 2331 requires only that a defendant's acts *appear* to be intended" to achieve one of three enumerated goals)(emphasis in

original). Objectively, defendant's statements were about fighting jihad in Somalia. Quite properly, the FBI investigated those statements, in part by asking defendant about them. Defendant responded by willfully making a false statement – denying he had discussion about traveling to Somalia. The proof of the falsity of those statements in contained in defendant's own recorded statements. Just as in the context of civil liability for funding terrorism, where Congress intended to punish individuals here who fund terror overseas, in the false statement context, of Section 1001, Congress intended to punish those who lie, and obstruct investigations, in the language of Section 2331(1), into "activities that" (A) involve violent acts....(B) that appear to be intended to coerce a population or government.... (C) outside the territorial jurisdiction of the United States. That is the gravamen of the offense. Had defendant been charged with material support of terrorism, the prosecution would not have been required to prove "an actual terrorist act." *See Boim*, 549 F.3d at 692. Here, the prosecution was not required to prove that defendant made it to Somalia, or in his words, had sufficient "connects" to find the mujihadeen. (Exhibit 1, recording of July 31, 2007). Defendant's statements, and his false denials of them, meet the definition of false statement involving international terrorism under Sections 1001 and 2331.

Respectfully submitted this 5th day of November, 2010.

DENNIS K. BURKE
United States Attorney
District of Arizona

s/ *Michael T. Morrissey*
MICHAEL T. MORRISSEY
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on November 5, 2010, I electronically transmitted the attached document to the Clerk's Office using the

3

1  CM/ECF System for filing:

2

3  Gerald Williams
Kristina Sitton
850 W. Adams Street, Suite 201
4  Phoenix, Arizona 85007
attorneys for defendant Elton Simpson

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28